[Civ. No. 24546. Fourth Dist., Div. One. July 19, 1982.]

In re the Marriage of JACQUELYN M. and WILBUR L. MILLER.
WILBUR L. MILLER, Respondent, v.
JACQUELYN M. MILLER, Appellant.

## COUNSEL

Shafer & Giardinelli and John V. Giardinelli for Appellant.

Christian R. Van Deusen for Respondent.

Opinion

THE COURT.*—Wilbur and Jacqueline Miller were married in 1972 and divorced in 1979. Before marrying Jacqueline, Wilbur contracted to buy a house, using his separate funds for the down payment. Escrow did not close until after the parties married, however, at which time Wilbur and Jacqueline took title as joint tenants. Jacqueline appeals a judgment awarding the house to Wilbur as his separate property, subject to a pro tanto community interest.

Civil Code section 5110 provides: "When a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single-family residence is the community property of the husband and wife." The Supreme Court in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] held this presumption may not be overcome by tracing the funds used to buy the home, but only by specific evidence showing a contrary agreement or understanding between the parties. Here the superior court found such an understanding and awarded the house to Wilbur as his separate property, subject to a *pro tanto* community interest. ▉ As Jacqueline points out, however, this finding is not supported by substantial evidence. There was no evidence showing Wilbur and Jacqueline agreed or understood the house was to be Wilbur's separate property. The only evidence Wilbur presented on the point was his testimony he told Jacqueline: (1) "That if anything happened to me, the house would be hers in which my children [from a previous marriage] would live." and (2) "[T]he property was taken in joint tenancy so that if anything happened to me ... the home would be there for my children to live in with her as their acting mother." This testimony shows, at most, Wilbur's motive for creating the dual-ownership interest—the right of survivorship; it does not evidence an agreement or understanding the house was to be his separate property. The court erred in so finding; the house was entirely community.

Wilbur says the Civil Code section 5110 community property presumption should not apply here, because he and Jacqueline did not "acquire" the house as joint tenants during marriage; rather, he acquired it before marriage by contracting to buy it. ▉ However, one who contracts to buy real property does not at that time "acquire" the

---

*Before Brown (Gerald), P. J., Cologne, J. and Staniforth, J.

property. Title to realty passes only upon full performance of the terms of the escrow agreement (*Love* v. *White* (1961) 56 Cal.2d 192, 194 [14 Cal.Rptr. 442, 363 P.2d 482]), here three weeks after the parties married. Wilbur acquired before marriage only an equitable right to compel transfer of title on the date set in the contract (see *Mamula* v. *McCulloch* (1969) 275 Cal.App.2d 184, 193-194 [79 Cal.Rptr. 571]). His equitable right (sometimes called equitable "title") merged into the full legal title he and Jacqueline took at closing.

As the Supreme Court noted in *Lucas*, it is the formal act of taking title which lends special force to the community property presumption of Civil Code section 5110. There the court said: "The presumption arising from the form of title is to be distinguished from the general presumption set forth in Civil Code section 5110 that property acquired during marriage is community property. *It is the affirmative act of specifying a form of ownership in the conveyance of title* that removes such property from the more general presumption. (See *Socol* v. *King, supra*, 36 Cal.2d [342] at p. 346 [223 P.2d 627].) *It is because of this express designation of ownership* that a greater showing is necessary to overcome the presumption arising therefrom than is necessary to overcome the more general presumption that property acquired during marriage is community property. In the latter situation, where there is no written indication of ownership interests as between the spouses, the general presumption of community property may be overcome simply by tracing the source of funds used to acquire the property to separate property." (*In re Marriage of Lucas, supra*, 27 Cal.3d 808, 814-815.) (Italics added; see also *In re Marriage of Trantafello* (1979) 94 Cal.App.3d 533 [156 Cal.Rptr. 556].)

For this reason, those cases espousing the so-called "inception of right" theory, by which the character of property as community or separate is said to depend on the purchaser's marital status at the time of the "inception of the right" by which title is finally perfected, are inapposite. (See, e.g., *Estate of Hill* (1914) 167 Cal. 59 [138 P. 690]; *Giacomazzi* v. *Rowe* (1952) 109 Cal.App.2d 498 [240 P.2d 1020]; *Estate of Reid* (1938) 26 Cal.App.2d 362 [79 P.2d 451]; *Estate of Henderson* (1932) 128 Cal.App. 397 [17 P.2d 786].) Language in some of these cases suggests if equitable title were acquired before marriage and legal title during marriage, the property would be separate because of the "inception" of the title before marriage. However, the cases themselves

do not actually stand for this proposition;[1] nor do any of them deal with the special joint tenancy residence presumption created by Civil Code section 5110. *Estate of Hill* involved property acquired by adverse possession. *Estate of Henderson* involved a void deed. In *Estate of Reid*, the question was whether a home which the husband contracted to buy during marriage was community property upon which a probate homestead could be vested in his widow under Probate Code section 661. And in *Giacomazzi v. Rowe*, the "inception of right" language was merely dictum. The property in that case was purchased before marriage and the sole question was the amount of reimbursement to which the community was entitled for its contribution to the property after marriage.

As *Lucas* makes clear, the special community property presumption of Civil Code section 5110 arises purely from the form in which title is taken. The time of contracting is irrelevant. Here title was taken in joint tenancy after marriage. The property was thus presumptively community. Since that presumption was not rebutted by evidence of a contrary understanding or agreement between the parties, the judgment must be reversed.

Extending the *Lucas*/Civil Code section 5110 presumption to a case such as this, in which one spouse contracts while single to buy property, using his separate funds for the down payment, works no unfairness. Rather, it forestalls any. As the Supreme Court noted in *Lucas*: "Unless the [noncontributing spouse] knows that the spouse contributing the separate property expects to be reimbursed or to acquire a separate property interest, he or she has no opportunity to attempt to preserve the joint ownership of the property by making other financing arrangements. The act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest. Accordingly, the expectations of parties who take title jointly are best protected by presuming that the specified ownership interest is intended in the absence of an agreement or understanding to the contrary." (*In re Marriage of Lucas, supra*, 27 Cal.3d 808, 815.)

The premarital contractor can preserve his separate property interest by taking title before marriage, by taking title in his name alone, or by securing his spouse's agreement that he is to retain an interest commen-

---

[1]Indeed, there are cases decidedly *contra*. (See *Vieux v. Vieux* (1926) 80 Cal.App. 222 [251 P. 640]; *Maskuns v. Maskuns* (1928) 93 Cal.App. 27 [268 P. 1093]; *Estate of Ball* (1949) 92 Cal.App.2d 93 [206 P.2d 1111].)

surate with his separate property contribution. Here Wilbur did none of these things. Jacqueline is entitled to the protection of Civil Code section 5110.

The judgment is reversed.

A petition for a rehearing was denied July 28, 1982, and respondent's petition for a hearing by the Supreme Court was denied September 15, 1982.