[No. A015032. Sixth Dist. Nov. 6, 1985.]

In re the Marriage of PRISCILLA L. and MARVIN KAHAN.
PRISCILLA L. KAHAN, Appellant, v.
MARVIN KAHAN, Respondent.

**[Opinion certified for partial publication.\*]**

---

*See footnote 2, *post,* page 65.

64

■■■■■■■■■■■■■■■

**COUNSEL**

Robert L. Gorman and Rosenblum, Parish & Bacigalupi for Appellant.

Lincoln A. Mitchell and Carlstrom, Heyler & Mitchell for Respondent.

**OPINION**

**BRAUER, J.**—In this family law matter, the interlocutory judgment as to the dissolution only was filed May 27, 1981. After trial on property issues, a "Further Judgment re Dissolution of Marriage" was filed September 10, 1981. Petitioner Priscilla Kahan (Priscilla) appeals from this second interlocutory judgment.[1] In light of supervening Civil Code section 4800.2, we reverse and remand to the trial court for further proceedings in accordance with the opinions expressed herein. In all other respects the judgment is affirmed.

The contentions on appeal are as follows:

1) The court's characterization of the family residence as community property was not supported by substantial evidence;

2) Valuation and allocation of the goodwill of a family corporation was not supported by the evidence presented;

3) The court erred in determining the value of certain shares of stock, since there was no evidence to support such a finding.[2]

---

[1]Such a judgment was expressly made appealable under Code of Civil Procedure section 904.1, subdivision (j), as it existed at the time the appeal was taken.

[2]This opinion is certified for partial publication. (Rule 976.1, Cal. Rules of Court.) Parts II and III are not included in the order of publication.

## I. *The Family Residence*

■ Our task when reviewing the sufficiency of the evidence "begins and ends with a determination as to whether there is *any* substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; italics added.) Substantial evidence in this regard is any evidence which is not "unbelievable per se." (*Evje* v. *City Title Ins. Co.* (1953) 120 Cal.App.2d 488 [261 P.2d 279].) When two inferences can reasonably be drawn from the facts presented, this court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pacific Co.*, *supra*, 3 Cal.2d at p. 429.)

Priscilla purchased the house in November of 1964 with separate property funds. Although the exact figures are unverified, it appears that she put approximately $6,000 down on a purchase price of approximately $30,000. At the time she was married to one Perkins; however, she took title and assumed the loan in her name alone, as Priscilla Perkins. Several months later she and Perkins were divorced and Perkins quitclaimed to her any interest he might have had in the property. Shortly thereafter respondent Marvin Kahan (Marvin) moved into the home. Marvin and Priscilla had previously been married to each other for 13½ years, from July 1949 to February 1963.

From this point on, the testimony is in sharp conflict. According to Marvin, from the time he and Priscilla commenced living together in 1965 and throughout their second marriage, earnings of both were routinely deposited in a joint account, out of which all expenses were paid, including the mortgage payment. Priscilla testified that the two maintained separate accounts prior to their remarriage in 1968.

Marvin testified that he received an inheritance of $20,000 in 1968. He told Priscilla at this time that he was going to deposit these funds in the joint account and she replied that she should also put the house in both names. He then deposited the $20,000 in the couple's Bank of America joint account. Priscilla denied that this conversation ever took place and maintained that Marvin kept his inheritance in a separate account in another city. In any event, several days after Marvin received his inheritance, Marvin and Priscilla remarried. Thereafter, until the parties separated in July of 1980, all expenses relating to the house were paid out of community funds.

In 1970 a major remodelling project was undertaken. To finance this, the parties obtained a bank loan, secured by a second deed of trust on the home in the amount of $18,600. The lender required both signatures on the prom-

issory note. According to Priscilla, Marvin would not sign unless she put the property in both their names. Therefore, on October 27, 1970, she executed a grant deed conveying the property to herself and Marvin as joint tenants. She maintained that she did this only to obtain the loan and did not intend a gift to the community of her separate property. Marvin's testimony is silent regarding this transaction, although he acknowledged being informed by Priscilla during this time that she had transferred the property to both of their names.

Priscilla testified that when Marvin referred to the property it was generally as "your home, Pat" and that he had told her he considered the property to be hers even though he lived there. Marvin testified he assumed the property was 50 percent his, based on the premarital agreement recounted above.

On this evidence the trial court found that "the family residence at 774 Arroyo Road, Los Altos, California, is the parties' community property and neither party has a separate interest therein." At the time of trial, the home had a market value of $242,500, encumbered by the original purchase money loan, with a remaining balance of $16,000, and a new second deed of trust in the amount of $60,000. The judgment directed that the property be sold and the equity of $166,500 be divided equally between Marvin and Priscilla. Alternately either could buy the other out for half this amount, or $83,250.

At time of trial controlling law was to be found in section 5110 of the Civil Code[3] and our Supreme Court's interpretation of this section in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285]. Section 5110 provided that for purposes of dissolution a residence acquired by husband and wife as joint tenants during their marriage was to be characterized as the couple's community property. As construed in *Lucas* this community property presumption could not be rebutted by tracing the source of acquisition to separate property. It could be rebutted only by evidence of an agreement between the parties, the so-called "Lucas agreement." The Lucas agreement need not be written, but may be implied from statements or conduct by the parties.

While this appeal was pending, the Legislature passed Assembly Bill No. 26 which deleted the community property provision in section 5110 and

---

[3]Unless otherwise noted, all code references are to the Civil Code.

adopted new sections 4800.1 and 4800.2.[4] Although these sections took effect January 1, 1984, they were both made expressly applicable to cases tried before January 1, 1984 but not yet final as of that date. (Stats. 1983, ch. 342, § 1.) The section 5110 presumption survives in new section 4800.1. However, while under *Lucas* an agreement rebutting the presumption may be proved from the circumstances and actions of the parties, section 4800.1 now requires a writing, either in the deed or as a separate agreement.

In the recent case of *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354] our Supreme Court ruled that retroactive application of section 4800.1 is unconstitutional. Such application results in an impairment of vested property rights without due process of law. We proceed therefore to analyze the trial court's finding according to the law as it existed at the time of trial.[5]

■   Applying section 5110 as interpreted by *Lucas* we find that the trial court's characterization of the property as community property was supported by substantial evidence.

Priscilla argues that her testimony that Marvin told her the home was hers was uncontroverted. On the contrary, Marvin's testimony indicating an agreement at the time of the remarriage to own the house jointly is in direct conflict with hers. In such a case we must defer to the trial judge's assessment of the witnesses and resolve any factual conflict in support of the court's finding. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) Substantial evidence to sustain a finding may consist of testimony of a party or other single witness. (*Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503 [154 Cal.Rptr. 874].) Although the court did not make a specific finding that there was no agreement sufficient to rebut the community property presumption, this is implied in the conclusion that the property was entirely community property. Moreover, Priscilla did not request such a finding.

■   Priscilla claims that the court improperly applied the principles of *Lucas* to these facts, since the property was not actually "acquired" by the

---

[4]Section 4800.1, relevant here, reads as follows: "[¶] For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

[5]We note, however, that application of the writing requirement of section 4800.1 to this case would not have changed the result, since no oral enforceable agreement was found.

parties during marriage but was her own separate property, deeded to both parties only to accomodate the lender. However, the community property presumption arises purely from the form of title in which property was taken. (*In re Marriage of Miller* (1982) 133 Cal.App.3d 988, 992 [184 Cal.Rptr. 408]; *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57, 60 [191 Cal.Rptr. 545].) Furthermore two courts have recently applied the presumption in the precise case where one spouse makes a transfer of separate property to joint tenancy in order to secure a home equity loan. (*In re Marriage of Anderson* (1984) 154 Cal.App.3d 572, 578 [201 Cal.Rptr. 498]; *In re Marriage of Neal* (1984) 153 Cal.App.3d 117, 124 [200 Cal.Rptr. 341], both reversed on other grounds by *In re Marriage of Buol, supra,* 39 Cal.3d 751.)

■ Having concluded that the court's finding was supported by the evidence, we now turn to a discussion of the effect, if any, of section 4800.2, enacted as a companion statute to section 4800.1. As noted above, both statutes were expressly made applicable to cases still pending as of January 1, 1984.

Section 4800.2 made two changes in the law as it was under *Lucas*: 1) it reversed the basic presumption regarding reimbursement of separate property contributions, and 2) it added a requirement that evidence rebutting this presumption must be in writing. Under *Lucas* it was presumed that the spouse making the separate property contribution intended a gift to the community, absent an agreement or understanding to the contrary. Section 4800.2 provides that a party is entitled to reimbursement of traceable separate property contributions unless there is a written waiver of reimbursement.[6]

The Supreme Court in *In re Marriage of Buol, supra,* 39 Cal.3d 751 limited its discussion to section 4800.1. We see no reason, however, why the same analysis would not be valid in regard to retroactive imposition of the writing requirement of section 4800.2.

---

[6]Section 4800.2 states: "[¶] In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

The basis for the court's decision in *Buol* is that a vested property right was created by oral agreement between the parties. In the absence of a sufficiently important state interest, legislation abrogating this right by retroactively imposing a writing requirement violates due process.

The Buol family home was purchased and maintained with wife's separate funds, although title was taken in joint tenancy on the advice of the realtor. There was evidence tending to show that both parties intended the home to be wife's separate property. Husband contributed nothing. At time of trial the home was worth $167,500. Wife had purchased it for $17,500. In this setting, if the new statutory scheme were to be applied retroactively to vitiate the Buols' agreement, husband would receive a windfall of $75,000, at wife's expense.

A similar inequity would result in the case at bar under one version of the evidence. According to Marvin, he and Priscilla agreed shortly before remarriage that the home was to be "theirs." Marvin was to give $20,000 of his separate property to the community in exchange for which Priscilla would put the property in both names. Each performed, albeit Priscilla's performance occurred several years later. If section 4800.2 were now applied Priscilla would be reimbursed for her part of the bargain and Marvin would not.[7] In addition, Priscilla would enjoy the lion's share of the appreciation on the property for two and one-half years, since her separate property contribution would be measured from the date she executed the grant deed and not from the date of the agreement.[8]

"[R]etrospective application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract." (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 756.) Clearly section 4800.2 applied retroactively to the case at bar would impair the parties' contractual rights if the trial court accepted Marvin's testimony.

The *Buol* court proceeds on a two step analysis. Having determined that a vested property right existed, the question is whether impairment of this right violates due process. This involves a balancing of various factors: " '[T]he significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, . . . the extent to which the retroactive application of the new law would

---

[7]Marvin would be reimbursed to the extent that he could trace any part of the $20,000 he deposited in the joint account in 1968 to "acquisition" of the home, a hopeless task in our view.

[8]This is discussed more fully *infra*.

disrupt those actions.'" (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761, quoting *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].)

The court found that section 4800.1 did not pass constitutional muster on application of this balancing test. The analysis is identical with respect to section 4800.2 in this context. The statute of frauds requirements embodied in sections 4800.1 and 4800.2 do not operate to correct any manifest unfairness in former law. Their application retroactively "only minimally serves the state interest in equitable division of marital property, . . ." (*In re Marriage of Buol,* 39 Cal.3d at p. 761.) On the other hand substantial property rights are at stake. The extent of the parties' reliance on family law as it existed at the time they made their agreement is difficult to ascertain. It does not strain reason however, to ascribe to the parties a rudimentary understanding of basic contract principles. Thus they could legitimately expect that if they struck a bargain and sealed it with performance on both sides, it would not be put asunder by legislative fiat more than a decade later. Finally, " '[t]he net effect of retroactive legislation is that parties to marital dissolution actions cannot intelligently plan a settlement of their affairs nor even conclude their affairs with certainty after a trial based on then-applicable law.' " (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 763, quoting *In re Marriage of Taylor* (1984) 160 Cal.App.3d 471, 479 [206 Cal.Rptr. 557] [Sims, J. dis.].)

Our conclusion with respect to retroactive application of section 4800.2 to change the parties' agreement rests entirely on the assumption that there *was* a binding agreement which was fully performed by both parties. Consequently we deem it necessary to remand the cause to the trial court to make a specific finding as to whether such an agreement was proven. Since the court's conclusion regarding the community property character of the residence could have been reached on the basis of the section 5110 presumption and Priscilla's failure to prove a *Lucas* agreement alone, a finding regarding the agreement alleged by Marvin was unnecessary to this determination and thus cannot be implied.

If the court determines that Marvin and Priscilla exchanged bargained-for consideration, we find under *Buol* that section 4800.2 cannot be applied retroactively to alter the parties' contract rights. If, on the other hand, the court does not find that such an agreement was proven, *Buol* does not stand in the way of giving retroactive effect to section 4800.2.

■ In supplemental briefing requested by this court, Marvin argues that the joint tenancy deed itself is sufficient as a written waiver of a right to reimbursement under section 4800.2. The Legislature, however, enacted

sections 4800.1 and 4800.2 for the purpose of changing the rule of *Lucas*. (83 Sen. J. (1983 Reg. Sess.) pp. 4865-4867.) If the same deed that created a presumption of community property under section 4800.1 were to operate as a waiver of reimbursement rights under section 4800.2, the net effect would be no change whatsoever in the *Lucas* rule. Thus it is obvious that the deed will not serve as a waiver. Therefore, section 4800.2 requires that Priscilla be reimbursed for her separate property contribution to the acquisition of the property.

The Legislature has expressed that the measure of this reimbursement is to be determined by the value of the separate property interest at the time of the conversion to the joint tenancy form of title. (83 Sen. J. (1983 Reg. Sess.) pp. 4865-4867.) This would require a determination of the fair market value of the property at the time of the conversion to joint tenancy on October 27, 1970, less outstanding encumbrances and less any community property contributions prior to the conversion. In this case community property contributions would include amounts paid on the principal loan balance, as well as on those loans borrowed by the couple for the purpose of improvements, and any other payments for improvements out of community funds. (Civ. Code, § 4800.2.) In addition, the community will have acquired a *pro tanto* share of the appreciation of the property from the date of marriage to the conversion date, based on the formula set forth in *In re Marriage of Moore* (1980) 28 Cal.3d 366 [168 Cal.Rptr. 662, 618 P.2d 208], as modified in *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 437-440 [181 Cal.Rptr. 910]. Any equity increase in the property due to appreciation after the date of conversion is attributable to the community under section 4800.2.

In summary, this portion of the judgment is reversed with directions to the trial court to make a finding as to whether the parties had an agreement regarding co-ownership of the home. That finding may be made on the evidence previously adduced or, in the court's discretion, after taking additional testimony. If the court finds such an agreement existed, no further proceedings are necessary. If the court does not so find, we direct that further proceedings be held to determine the extent of separate property reimbursements in accordance with section 4800.2 and the guidelines set forth herein.

II. *Goodwill Valuation and Allocation of Alpro**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote 2, *ante,* page 65.

The judgment is reversed as to the family residence and the cause is remanded to the trial court for further proceedings. In all other respects the judgment is affirmed.

Panelli, P. J., and Agliano, J., concurred.