[No. E000987. Fourth Dist., Div. Two. Dec. 30, 1985.]

In re the Marriage of ADRIENNE M. and DAVE LYNN McDOLE.
ADRIENNE M. McDOLE, Appellant, v.
DAVE LYNN McDOLE, Respondent.

**COUNSEL**

Steven A. Becker for Appellant.

Sprague, Milligan & Beswick, Dennis S. Tilton and Richard R. Beswick for Respondent.

**OPINION**

**KAUFMAN, Acting P. J.**—Adrienne M. McDole appeals from an interlocutory judgment of dissolution of marriage in which the trial court characterized the family residence as community property and ordered it sold and the proceeds of sale divided so as to equalize the division of community property. She contends the community property characterization of the family residence is not supported by substantial evidence and is contrary to law. Alternatively she contends that Civil Code section 4800.2,[1] enacted in 1983, is to be applied retroactively to this case and that she is therefore entitled to be reimbursed for her separate property contribution to acquisition of the family residence. In addition, appellant requested a statement of decision below, but none was made, and because the record does not adequately disclose the basis for the trial court's decision, we have ourselves raised the question of the effect of the failure of the trial court to render a statement of decision.

---

[1]Unless otherwise indicated, all statutory references in this opinion are to the Civil Code.

## Facts

Adrienne M. McDole (wife) and Dave Lynn McDole (husband) were married on May 16, 1981, and separated on July 6, 1982.

On or about June 29, 1977, prior to the marriage, wife acquired a residence on Arden Avenue as her separate property pursuant to a quitclaim deed executed by her previous husband. Husband also owned a home of his own. Sometime in April 1981, still before the marriage, the parties discussed purchasing a new home and selling their respective residences. In contemplation of this purchase, husband sold his home, taking back as part of the sales price a note and trust deed executed to the parties as husband and wife. The parties soon realized, however, that because of high interest rates they would not be able to afford to buy a new house. They therefore decided to make a second trust deed loan on wife's house in order to renovate and improve it so the parties could use it as their residence.

Wife could not obtain the loan without husband being a co-borrower, because at that time wife earned only approximately $1,500 a month while husband's monthly income averaged about $6,000. Accordingly, on or about April 6, 1981, still before the marriage, wife executed a grant deed on the Arden Avenue residence to herself and husband as unmarried joint tenants (the first deed). The deed was recorded April 9, 1981. Both parties testified at trial that this deed was executed to enable them to make a second trust deed loan on the property to obtain funds for making renovations.

There was a substantial amount of testimony at trial about a discussion on or about April 11, 1981, concerning the character of the family residence. During a dinner engagement with two friends, the parties discussed the anticipated second deed of trust on the Arden Avenue residence. The conversation became more intense when wife voiced a concern for her children's welfare and indicated her desire for a written agreement specifying that her equity in the home would remain her separate property but that any increase in value during the marriage would be shared with husband. Wife then wrote out something to that effect on a place mat or napkin. Husband scribbled his name on it without reading it and then strode out of the restaurant without waiting for dinner. There was conflicting testimony concerning the intentions of the parties regarding this writing.

The parties finalized arrangements to obtain a second deed of trust for approximately $22,000 on May 14, 1981, and were married on May 16, 1981. The lender, however, required that husband and wife appear on the record title as married persons and, therefore, a grant deed was executed, transferring the property from husband and wife as unmarried persons in

joint tenancy to themselves as married persons in joint tenancy (the second deed). This second deed was acknowledged on July 14 and recorded on July 16, 1981.

Most of the money received from the second deed of trust was used for improvements on the house. Approximately 75 percent of the improvements were completed at the time husband deposited the cash received from the sale of his home into the joint checking account. Although no finding was made on the point, it was asserted at oral argument that only about $4,000 from the sale of husband's home was used for community purposes.

Following their marriage, husband and wife lived in the Arden Avenue home as their family residence until they separated in July 1982.

The trial court determined the Arden Avenue residence to be community property and ordered it sold, the proceeds to be equally divided so as to equalize the division of community property. Wife's request for a statement of decision, opposed by husband, was not honored. Her subsequent motions for reconsideration, for new trial and to vacate judgment were all denied. Husband's motion requesting that the judgment be entered nunc pro tunc as of December 22, 1983, was granted. Wife then filed this timely appeal.

### Discussion

At the time the trial court rendered its judgment, the law in California permitted married parties to change the character of their marital property and overcome presumptions of community property created by the form of title through expressions of mutual consent whether written or oral. (See *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 813 [166 Cal.Rptr. 853, 614 P.2d 285]; see also *In re Marriage of Miller* (1982) 133 Cal.App.3d 988, 992 [184 Cal.Rptr. 408]; *In re Marriage of Hayden* (1981) 124 Cal.App.3d 72, 76-77 [177 Cal.Rptr. 183].) Wife attempted at trial to prove through the "napkin agreement" that her premarital equity in the family residence remained her separate property. The trial court, however, characterized the property as community, stating in its notice of intended decision: "That regarding the family residence located at 1728 Arden Street . . . the Court finds the totality of the facts supports respondent's position that the residence is community property. Both parties in their arguments neglect the considerable uncontradicted evidence of what the parties did with respondent's proceeds from sale of his residence and how they treated all of their property. Clearly it was the intention of the parties to pool all of their joint resources. As further evidence of this is their plans to sell the Arden house, which would have occurred but for the cost of money to purchase a new one. Exhibit No. 2 (the place mat) cannot be construed as an agreement

reached by the parties after arms-length negotiations encompassing the elements of mutuality and adequate consideration. Petitioner's secret intent cannot be used on hindsight at the first sign of storm clouds to beat over respondent's head as a 'gotcha', so to speak. Petitioner's allegation of an agreement to overcome the Lucas presumption as based on this 'alleged' agreement, i.e., the place mat, cannot be sustained."

In our original opinion in this case we held that section 4800.2 was applicable, that wife was therefore entitled to reimbursement for her separate property contribution to acquisition of the family residence, that her separate property contribution exceeded in amount the equity in the property at the time of trial and that, therefore, since she was willing, indeed desirous, of having it, the house should have been awarded to wife in lieu of reimbursement under section 4800.2. We were persuaded by husband's petition for rehearing, however, that we had failed to give adequate consideration to the possible effects of the first deed, purporting to transfer the property from wife to herself and her then husband-to-be in equal shares as joint tenants. Accordingly, we granted husband's petition for rehearing. At about the same time the California Supreme Court handed down its decision in *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354] holding that section 4800.1, which is related to and was enacted at the same time as section 4800.2, could not be constitutionally applied retroactively. In addition, the California Supreme Court granted review in several cases which had held section 4800.2 could be retroactively applied, and that question is now before the Supreme Court in several cases under review.

In view of all these circumstances, at oral argument on rehearing we advised counsel for the parties that decision in this court would probably await determination of the question of the constitutionality of the retroactive application of section 4800.2 by the California Supreme Court unless upon further study we concluded the judgment should be reversed in any event because of the trial court's failure to render a statement of decision. We have so concluded.

■ So far as we have discovered the record is silent as to the reason the trial court failed to render a statement of decision. However, husband opposed wife's request for a statement of decision on the ground wife's request was untimely, and presumably the court's failure to honor wife's request was based on that ground. Unfortunately, that conclusion was erroneous.

The court's memorandum of tentative decision was signed, filed and served by mail on September 1, 1983. Wife's request for a statement of decision was deposited in the mail on September 14, 1983, and is file

stamped September 15, 1983. In the request it is stated by counsel for wife that the notice of tentative decision was not received by him until September 6, 1983, but that fact is of no consequence as we shall see.

Under the governing statute, Code of Civil Procedure section 632, a request for statement of decision, with an exception not here pertinent, must be "made within 10 days after the court announces a tentative decision." However, subdivision (a) of section 1013 of the same code provides in relevant part: "In case of service by mail, the notice or other paper must be deposited in a post office, mailbox . . . or other like facility regularly maintained by the United States Postal Service . . . . The service is complete at the time of the deposit, but any prescribed period of notice and any right or duty to do any act or make any response within any prescribed period or on a date certain after the service of such document served by mail shall be extended five days if the place of address is within the State of California . . . ."

Here, the court's announcement of its intended decision was in writing and was made on September 1, 1983. Wife had 10 days under section 632 of the Code of Civil Procedure to request a statement of decision and that time was extended an additional 5 days by section 1013, subdivision (a). Thus, wife had a total of 15 days in which to timely request a statement of decision. Her request was mailed on September 14, and filed on September 15, within 15 days of September 1 and was therefore timely.

It is reversible error for a court to fail to render a statement of decision pursuant to Code of Civil Procedure section 632 when one is duly and timely requested by a party. (*In re Marriage of S.* (1985) 171 Cal.App.3d 738, 746-750 [217 Cal.Rptr. 561]; *Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129 [210 Cal.Rptr. 114].) The application of this rule is particularly appropriate in this case because the reasons for the trial court's decision otherwise disclosed in the record are entirely inadequate to inform this court of the legal bases for the decision. We are unable to ascertain whether the trial court determined that the first deed was an effective gift, a transfer of property in consideration of an agreement, or executed for convenience only because of the necessity of using the property as security for a second trust deed loan. The court's reference in its notice of intended decision to the *Lucas* rule would suggest the trial court gave no effect to the first deed, but we simply do not know. Moreover, the court's finding that "it was the intention of the parties to pool all of their joint resources" is not of much help in the absence of a determination as to what the terms of the agreement were. Was it agreed that wife would exchange one-half of her rather substantial equity in the Arden Avenue property for one-half of husband's equity in his home

or merely that each party would contribute their respective equity to the pool, retaining their right to reimbursement from the proceeds of the pool in the event of an eventual sale of the property or a dissolution of the marriage?

## *Disposition*

That portion of the judgment dividing the community property is reversed with directions to the trial court to render a statement of decision. The trial court may but is not required to receive additional evidence relevant to characterization and/or valuation of the Arden Avenue property.

McDaniel, J., and Rickles, J., concurred.