[No. B004916. Second Dist., Div. Five. Feb. 6, 1986.]

In re the Marriage of LINDA M. and STEFAN E. SCHERR.
LINDA M. SCHERR, Appellant, v.
STEFAN E. SCHERR, Respondent.

COUNSEL

Freid & Goldsman and Laurence R. Goldman for Appellant.

Stefan E. Scherr, in pro. per., Gary E. Brown, Gould, Fuchs & Phillips and Howard M. Fuchs for Respondent.

OPINION

FEINERMAN, P. J.—Linda M. Scherr (wife) appeals from certain provisions of the trial court's interlocutory judgment of marital dissolution. She contends that the court erred in characterizing the single-family residence as the sole and separate property of her husband, Stefan E. Scherr (husband), subject only to a pro tanto community interest, absent an agreement or understanding that the residence would remain separate property after the recording of a joint tenancy deed during marriage.

## BACKGROUND

Husband and wife were wed on December 30, 1973, and separated approximately seven years later, after the birth of one child. On October 28,

1983, the marriage was dissolved by an interlocutory judgment which designated the family residence at 14952 Gilmore in Van Nuys (hereinafter referred to as Gilmore) as husband's separate property, subject to a community pro tanto interest.

Husband purchased the Gilmore property on August 2, 1973, about five months prior to marriage, and took title in his name alone, as a single man. On October 6, 1978, he executed a deed which transferred title to Gilmore to the parties, husband and wife, as joint tenants.

The deed was prepared by wife after husband had an accident because she believed that she and her son needed protection in the event of husband's death, inasmuch as husband had no will.[1] In drafting the deed, wife chose the words "husband and wife as joint tenants," upon the suggestion of an attorney in her office.

During trial, testimony of husband and wife differed as to the circumstances surrounding and the significance attaching to the joint tenancy deed. Wife stated that she had had several discussions with husband about preparing a deed in both parties' names and that husband had said, "fine." After showing husband the deed, she stated that husband read it over and put it in his briefcase, where he kept it until the parties had the deed notarized at a bank. She also said that until the time of the dissolution proceedings, she had always believed that the house was equally hers and her husband's because husband "always told [her she] had nothing to worry about."

To the contrary, husband testified that he had only skimmed the deed and did not understand its full import before wife grabbed it back out of his hands. He stated that wife would not let him see the deed again until a few days later when it was signed and notarized. He claimed that he was emotionally upset and felt pressured at the time wife first showed him the deed and that this led to "big fights."[2] He stated that he was unconcerned about the change in title, however, because wife had told him that the house was still his and that the deed was to protect wife and the parties' child in case of husband's death. He maintained that when he signed the deed, both he and wife repeated the protective purpose of the joint tenancy form and that

---

[1]Wife apparently heard a discussion about properties and estates at the law offices where she worked as a bookkeeper. She feared that she would have insufficient funds with which to purchase the family home from husband's estate, should he die.

[2]Husband stated that he "wasn't emotionally up to" reviewing the document because he was "going to a lot of doctors"—apparently in the wake of a recent accident. According to wife's deposition, it was husband's tendency to be "accident prone" which induced her to seek to secure a property interest in Gilmore in case of husband's death.

he told wife, "[t]he house is still mine." Husband reexamined the deed six months after its signing. He asked wife about the document and she assertedly responded, "'Still your house; to protect us in case' of [your] death."

## DISCUSSION

■ Wife contends that a family residence acquired during marriage by husband and wife as joint tenants is presumed to be community property under Civil Code section 5110.[3] She argues that this presumption could only have been rebutted by proof of an understanding or agreement between the parties to preserve a separate property interest in husband and that absent such an understanding, it was error for the trial court to characterize Gilmore as husband's separate property.[4] Wife relies for this proposition primarily on the holdings in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] and *In re Marriage of Miller* (1982) 133 Cal.App.3d 988 [184 Cal.Rptr. 408].

In *In re Marriage of Lucas,* the parties purchased a home after marriage, with a down payment and certain improvements provided by wife's separate property. The remainder of the expenses on the property was paid with community funds. In its description of the parties' intent respecting ownership of the residence, the trial court found that "'[t]he only discussions with regard to taking joint tenancy title to the property related to wife's understanding that title would pass to husband upon her death . . . that the children would benefit from this result'" and that certain favorable tax consequences were contemplated. The trial court further found that "'[w]ife did not intend to make a gift to the husband of any interest in the home purchased with her separate funds, nor did she know of any other legal significance of taking title to real property in the manner it was taken. Neither did husband intend to make a gift'" of community funds to wife's separate interest. (*In re Marriage of Lucas, supra,* 27 Cal.3d at p. 812.)

The Supreme Court in *Lucas* held that the act of taking title in joint tenant and equal ownership form was inconsistent with an "intention to preserve a separate property interest," absent an agreement or understanding to the

---

[3]Civil Code section 5110 provides in relevant part that "[w]hen a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single-family residence is the community property of the husband and wife."

[4]Both parties agree that in determining whether the trial court erred in its characterization of the family residence, we cannot apply Civil Code section 4800.1 retroactively. (*In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354].) Civil Code section 4800.1 now requires a writing to rebut the presumption that property acquired during marriage in joint tenancy form is community property.

contrary. The court reasoned that "[t]o allow a lesser showing could result in unfairness to the spouse who has not made the separate property contribution." (*In re Marriage of Lucas, supra,* 27 Cal.3d at p. 815.) In the record before it, the *Lucas* court found no evidence of an agreement or understanding that wife was to retain a separate property interest in the family home and noted that there was no finding by the trial court on the question. The only findings in this regard were that neither party intended a gift to the other. The court concluded that such evidence and findings were "insufficient to rebut the presumption arising from title set forth in Civil Code section 5110." (*Ibid.*)

Similarly, in *In re Marriage of Miller,* the court found that there was not substantial evidence to support the trial court's finding that an understanding had been reached that the family residence was to be the husband's separate property. There, husband had contracted before marriage to buy the house, using his separate funds for the down payment. However, escrow did not close until after the parties married. The only evidence presented that husband understood the home to be his separate property was husband's testimony that the property was placed in joint tenancy so that if "anything happened to [him]" their home would be available for his wife and children to live in. (*In re Marriage of Miller, supra,* 133 Cal.App.3d at p. 990.)

In reversing the trial court, the *Miller* court held that the husband's testimony only showed his motive for creating the dual-ownership interest— the right of survivorship; "it [did] not evidence an agreement or understanding the house was to be his separate property." (*In re Marriage of Miller, supra,* 133 Cal.App.3d at p. 990.) Even though husband had contracted for the house before marriage, the reviewing court held that it had been acquired during marriage for purposes of Civil Code section 5110. This was because husband's equitable title in the property did not merge into the full legal title until after marriage, when the property was taken in joint tenancy by husband and wife. (*Id.,* at pp. 991-992.)

In the case at bench, wife's reliance on *Lucas* and *Miller* is misplaced. First, the presumption regarding title in Civil Code section 5110 pertains to property "acquired during marriage." Here, the form of title to Gilmore was changed almost five years into the parties' marriage. Both legal and equitable title were clearly taken as husband's sole and separate property before marriage. The case law is unclear whether such a change in title *after* marriage for survivorship purposes is subsumed by the language of section 5110.[5]

---

[5]See, for example, *In re Marriage of Miller, supra,* 133 Cal.App.3d 988. There, the court stated that the special community property presumption of Civil Code section 5110 arose

Second, even if Civil Code section 5110 were found to apply, substantial evidence was received which supports the conclusion reached by the trial court. In this determinative aspect, this case differs from *Lucas* and *Miller*. According to husband's testimony, the husband and wife agreed not only that Gilmore would be placed in joint tenancy to preserve a right of survivorship, but also that husband would maintain Gilmore as his separate property.

In its statement of decision, the trial court found the following: "16. Both parties agreed that the only purpose in Respondent's executing the Deed of October 6, 1978 was to protect the child and the Petitioner in the event of Respondent's death. . . .

"23. At the time Respondent executed the Grant Deed on October 6, 1978, both parties acknowledged that GILMORE was to remain the separate property of Respondent.

"24. Respondent's execution of the Grant Deed on October 6, 1978, was an act by Respondent at the request of Petitioner who represented to Respondent that the only effect of such act was to protect her and the child in the event of his death.

"25. Subsequent to the execution of the Grant Deed on October 6, 1978, Petitioner and Respondent had a discussion wherein Petitioner confirmed that GILMORE had remained separate property of Respondent. . . ."

Thus, the trial court found a contemporaneous agreement that Gilmore would remain husband's separate property, it found the reason for that agreement, and it found a subsequent confirmation by wife of that agreement. The court further found that there was no other agreement that Gilmore be transmuted to community property and that husband never intended a gift. Finally, the court stated that one of the legal bases for its decision was that "[t]he evidence [was] sufficient to overcome the inference arising from the Joint Tenancy Deed executed by [husband] on October 6, 1978."

Wife objects to the trial court's use of the term "inference," because Civil Code section 5110 creates instead a "presumption" of community

purely from the form in which title was taken. The time of contracting, it stated, was irrelevant. Title had been taken in joint tenancy after marriage and the property was therefore presumptively community. Nevertheless, escrow had closed on the property in question after marriage. Thus, the court also offered the following prophylactic advice: "The premarital contractor can preserve his separate property interest by taking title before marriage, by taking title in his name alone, or by securing his spouse's agreement that he is to retain an interest commensurate with his separate property contribution." (*Id.*, at pp. 992-993.) Here, husband seems to have secured such protection. He purchased Gilmore five months before marriage and took title in his name alone.

property. We find that related case law frequently uses the two terms almost interchangeably to hold that whether evidence is sufficient to overcome a presumption or inference arising from a joint tenancy deed to husband and wife is a question of fact. (See, e.g., *In re Marriage of Frapwell* (1975) 49 Cal.App.3d 597, 601-602 [122 Cal.Rptr. 718]; *Price* v. *Price* (1963) 217 Cal.App.2d 1, 10 [31 Cal.Rptr. 350].) Moreover, in the context of the overall statement of findings, it is clear that the trial court believed that husband had rebutted any presumption of community property stemming from the joint tenancy change of title.

As the court in *In re Marriage of Knickerbocker* (1974) 43 Cal.App.3d 1039 [118 Cal.Rptr. 232] noted, the rules governing the characterization of marital property are clear: "A finding that property owned by a married person is separate property is a finding of ultimate fact. [Citation.] Whether the evidence adduced to overcome the presumption of community property is sufficient for the purpose is a question of fact for the trial court. [Citation.] Such a finding is binding upon an appellate court if it is supported by sufficient evidence or if it is drawn from evidence which is conflicting or subject to differing inferences. If the trial court has concluded that a presumption has been overcome, this determination will not be disturbed upon appeal if the evidence is in substantial conflict or is subject to varying inferences. [Citation.]" (*Id.*, at p. 1042.)

Here, the trial court obviously believed husband's testimony that there was a mutual agreement or understanding regarding the separate character of Gilmore. In such a case, we must defer to the trial court's assessment of the witnesses and resolve any factual conflict in support of the court's findings. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]; *In re Marriage of Kahan* (1985) 174 Cal.App.3d 63, 66, 68 [219 Cal.Rptr. 700].) Substantial evidence to sustain a finding may consist of a party or other single witness. (*In re Marriage of Mix, supra,* 14 Cal.3d at p. 614; *People* v. *Kahan, supra,* 174 Cal.App.3d at p. 68.) Accordingly, we find that the record supports the court's characterization of the family residence as husband's sole and separate property, subject only to a pro tanto community interest.

The judgment is affirmed.

Ashby, J., and Eagleson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 21, 1986.