[No. C009527. Third Dist. Sept. 30, 1991.]

Conservatorship of the Person and Estate of LINDA JOHNSON.
JOHN F. CODY, as Public Guardian, etc., Petitioner and Respondent, v.
LINDA JOHNSON, Objector and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Nielsen & Tustin and Karen Tustin for Objector and Appellant.

David E. Whittington, County Counsel, and Bruce A. Kimzey, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**SCOTLAND, J.**—Linda Johnson appeals from the order reappointing the Public Guardian of El Dorado County as conservator of her person and estate under the Lanterman-Petris-Short Act (LPS Act). (Welf. & Inst. Code, § 5000 et seq.; further statutory references are to the Welfare and Institutions Code unless otherwise specified.) She contends (1) the evidence does not support the finding of grave disability; (2) the trial court erred by failing to consider alternatives to conservatorship; and (3) the evidence is insufficient to justify the placement power granted to the Public Guardian and the special disabilities imposed upon appellant.[1] We shall affirm the judgment (order of reappointment).[2]

### DISCUSSION

### I

A conservatorship may be established under the LPS Act for any person who is gravely disabled as a result of a mental disorder. (§ 5350.) "Gravely disabled" is defined as a condition in which, as a result of a mental disorder, a person is unable to provide for his or her basic personal needs for food, clothing or shelter. (§ 5008, subd. (h)(1).)

■■ Appellant concedes the trial court did not err in finding that she suffers from a mental disorder. However, she claims the evidence is insufficient to support the finding that she is gravely disabled as a result of this mental disorder. We disagree.

■■ Grave disability must be proven beyond a reasonable doubt to establish and to renew LPS conservatorships. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 225-226 [152 Cal.Rptr. 425, 590 P.2d 1]; *Conservatorship of Pollock* (1989) 208 Cal.App.3d 1406, 1411 [257 Cal.Rptr. 14].)

---

[1]Finding appellant "gravely disabled to the point where she can't care for herself," the trial court imposed the following disabilities: appellant is precluded from possessing firearms or other dangerous weapons, having a driver's license to operate a motor vehicle, entering into contracts, refusing or consenting to treatment related to the issue of grave disability, and refusing or consenting to other medical treatment.

[2]While the reappointment order expired on June 4, 1991, we decline to consider the matter moot. (See *In re Michael D.* (1977) 70 Cal.App.3d 522, 524, fn. 1 [140 Cal.Rptr. 1].)

■ On review, we apply the substantial evidence test to determine whether the record supports a finding of grave disability. (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577 [254 Cal.Rptr. 552].) The testimony of a single witness is sufficient to support the trial court's finding. (*In re Marriage of Scherr* (1986) 177 Cal.App.3d 314, 320 [222 Cal.Rptr. 872]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 282, p. 293.)

■ Dr. Stanley Wang, chief psychiatrist for the county psychiatric health facility (PHF), testified regarding appellant's psychiatric history, including 11 involuntary admissions to PHF over the 2½-year period between February 1988 and the time of trial in August 1990. During her initial hospitalization, appellant was diagnosed as suffering from an acute adjustment disorder in reaction to the breakup of her relationship with her boyfriend, David. At that time, she was hallucinating and reported hearing David's voice commanding her to commit suicide. Each subsequent admission to PHF related to the same condition, with appellant's pathology becoming more serious in nature, causing Dr. Wang to conclude that appellant was not merely suffering from a simple adjustment disorder but had sustained a "major psychotic breakdown." He amended his diagnosis to "schizophrenia with several depressive features [of] suicidal proportion."

In November 1989, appellant was admitted to PHF after a nearly successful suicide attempt. While Dr. Wang believed appellant no longer was suicidal at the time of trial, he had observed no improvement in her condition with respect to her emotional maturity and her ability to cope, make logical decisions and defer gratification. He testified that appellant displayed no insight into these problems or her need for psychiatric treatment, noting that she had a history of noncompliance with taking medications prescribed for her mental illness after being released from treatment facilities. Dr. Wang concluded that appellant's mental disorder made her incapable of caring for her own food, shelter and clothing.

Dr. Wang was qualified to render an opinion on the issue. Although he was not appellant's attending psychiatrist at the time of trial, he had treated her during her previous admissions to PHF and was familiar with her history. Dr. Wang was the psychiatrist who originally recommended that an LPS conservatorship be established for appellant, and he had submitted a declaration in support of the initial reestablishment petition filed by the conservator. Moreover, Dr. Wang personally examined appellant the day before trial and found no substantial improvement in her condition which had prompted his initial conservatorship recommendation. Appellant called no expert witness to controvert the testimony of Dr. Wang on the issue of grave disability, nor did she attack his conclusion during cross-examination. Accordingly, we conclude that Dr. Wang's testimony is sufficient to support the trial court's

finding of grave disability.[3] (Cf. *In re Marriage of Scherr, supra,* 177 Cal.App.3d at p. 320.)

. ■ Nevertheless, citing section 5350, subdivision (e), appellant contends the gravely disabled finding cannot be sustained because appellant's mother was "willing and able to assist [appellant] in meeting her personal needs." We disagree.

Section 5350, subdivision (e)(1), provides: "[A] person is not 'gravely disabled' if that person can survive safely without involuntary detention with the help of responsible family, friends, or others who are both willing and able to help provide for the person's basic personal needs for food, clothing and shelter."

Appellant's mother, Sarah Cornelius, testified she was willing to provide a home for appellant, to care for her, and to see that she obtained appropriate therapy and took the medication prescribed to treat her psychiatric condition. However, despite Ms. Cornelius's laudable intentions, there was substantial evidence to support a conclusion that the assistance she offered fell short of that required under section 5350, subdivision (e)(1). As the trial court observed, appellant's condition was "beyond an ordinary person's ability to deal with, . . . [requiring] expert assistance. . . ." Dr. Wang testified that the most appropriate placement for appellant was a locked psychiatric facility due to her need for a "structured place that has [a] high level of professional staffing . . . [and] supervision." Any less restrictive placement was rejected by Dr. Wang as unsuitable.

Considering the evidence, the trial court reasonably could conclude that, even with the best of intentions, Cornelius would be unable to provide the type of structured environment appellant required. Cornelius had six other children in the home and was employed four days a week. While she testified that a friend would care for appellant when Cornelius was at work, there was no evidence this person was qualified to assume such a responsibility. Moreover, Cornelius's ability to ensure her daughter's participation in

---

[3]Appellant contends that comments made to her by the court at the conclusion of this trial "indicate a shifting of the burden of proof to the conservatee and a confusion of an unwillingness to participate in the [treatment] program with grave disability." Appellant reads too much into these remarks. The court's comments, urging appellant to participate more actively in treatment, indicating it was "up to [her]" if she is serious about wanting to try out-patient programs, and stating she had to "prove to the experts" that she "deserves to have a less restrictive placement," were made after the trial judge found appellant to be gravely disabled. In our view, they represent nothing more than the court's advice and encouragement to appellant to take advantage of the services offered to her in order to achieve her objective of being released from the psychiatric facility to reside with her mother.

treatment is questionable given appellant's lack of insight into her condition. Even as a patient in a locked facility, appellant refused to participate actively in the therapy offered there. And, while she testified she would take medication if released to her mother's care, appellant inconsistently testified she had "more power than pills" and thought she could do better without them.

According to the testimony of Sandra Martin, appellant's case manager, Cornelius admitted less than four months before trial that she was not capable of taking care of appellant or of meeting her needs.[4] This concession is illustrated by the fact that appellant's near fatal suicide attempt in October 1989 was committed while she was released to Cornelius's care for a home visit. While Cornelius responded appropriately to this crisis, it demonstrates appellant's need for close and continuous supervision, which according to the evidence cannot be provided by Cornelius.

Under section 5350, subdivision (e)(1), a person is not gravely disabled only if he or she can *survive safely* with the assistance of a third party. There is substantial evidence that the assistance offered by Cornelius, while well intended, would not meet this requirement.[5]

## II, III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[4]While Cornelius denied making this statement, we must resolve all conflicts in the evidence in favor of the finding made by the trial court. (*In re Marriage of Scherr, supra*, 177 Cal.App.3d at p. 320.)

[5]The parties have raised the issue of whether section 5350, subdivision (e)(2), precluded the trial court from considering Cornelius's testimony on the issue of third party assistance. This section provides that third parties shall not be considered willing or able to provide assistance unless they so indicate in writing. This section has no application in this case. The purpose of section 5350, subdivision (e), "is to avoid the necessity for, and the harmful effects of, requiring family, friends, and others to publicly state, and requiring the court to publicly find, that no one is willing or able to assist the mentally disordered person in providing for the person's basic needs for food, clothing, or shelter." This was not the case here; Ms. Cornelius took the stand at trial and testified as to her willingness to provide assistance to her daughter. No purpose of section 5350, subdivision (e), would be served by requiring her to also execute a writing to this effect.

*See footnote, *ante*, page 693.

## Disposition

The judgment (order of reappointment) is affirmed.

Carr J. Acting P. J., and Sparks, J., concurred.