Mary Margaret **CIET**, Plaintiff,

v.

Billie Jean **KAUFMAN**, Defendant and Appellant,

v.

Larry Lee **CIET**, Defendant and Appellee.

No. 940282–CA.

Court of Appeals of Utah.

Aug. 24, 1995.

---

Jerome H. Mooney, Wendy M. Lewis (Argued), Mooney & Associates, Salt Lake City, for appellant.

Randall Lee Marshall (Argued), Salt Lake City, for appellee.

Before ORME, Presiding Judge, and GREENWOOD and WILKINS, JJ.

GREENWOOD, Judge:

Billie Jean Kaufman (Kaufman) appeals the trial court's grant of summary judgment in favor of Larry Lee Ciet (Ciet), awarding him the proceeds from the sale of real property. We affirm.

## BACKGROUND

On April 12, 1990, Robert H. Hudson (Hudson), Kaufman's father and Ciet's grandfather, executed an Inter Vivos Trust (Trust) wherein he named himself as both trustor and trustee. Hudson transferred to the Trust his interest and title to certain real property (the Property). The Trust provides that if the Property has not been sold or otherwise disposed of at Hudson's death, the Property shall be distributed to Ciet. However, the Trust also provides that if the Property has been sold or otherwise disposed of, the provision distributing the Property to Ciet is void. Further, the Trust states that after Hudson's death all assets of the Trust estate shall be divided equally among Hudson's three children—Ramona Rogers, Mary Margaret Ciet, and Kaufman.

On May 20, 1992, Hudson entered into an earnest money agreement with Mr. and Mrs. Nadeem Masih to sell them the Property. Hudson died after the earnest money agreement was executed but before the specified date of closing. Mary Margaret Ciet, as the successor trustee, directed Ciet to sell the

Property to the Masihs pursuant to the terms of the earnest money agreement.

On December 19, 1992, Mary Margaret Ciet assigned any interest she had in the proceeds of the Property's sale to Ciet. Ramona Rogers subsequently assigned any interest she had in the proceeds to Ciet as well.

On June 28, 1993, Mary Margaret Ciet brought an action against Ciet and Kaufman to determine the parties' respective interest in the proceeds of the sale of the Property. Ciet and Kaufman filed cross-motions for summary judgment, each claiming entitlement to the remaining one-third of the proceeds.[1] On March 30, 1994, the trial court entered summary judgment in favor of Ciet, and awarded him the remaining third of the proceeds. The trial court's judgment was based on its conclusion that the executed earnest money agreement did not constitute sale or disposition of the Property.

## ISSUE ON APPEAL

The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of Ciet, concluding that the Property had not been sold or disposed of as of the time of Hudson's death.

## STANDARD OF REVIEW

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). A review of a trial court's grant of summary judgment presents questions of law that this court reviews for correctness. *Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1043 (Utah App.1993). Further, the evidence is viewed "in the light most favorable to the losing party." *Themy v. Seagull Enters.*, 595 P.2d 526, 528–29 (Utah 1979).

## ANALYSIS

■ Kaufman argues that the Property was disposed of at the time of Hudson's death because he had executed the earnest money agreement. Further, Kaufman asserts, the proceeds of the sale became an asset of the Trust Estate to which she is entitled a one-third portion. Ciet argues that an earnest money agreement is contingent upon the happening of certain events as set forth in the agreement, and thus the Property remained Hudson's until the closing—which did not occur until after his death.

■ An earnest money agreement is a "legally binding executory contract for the sale of real property." *Lach v. Deseret Bank*, 746 P.2d 802, 805 (Utah App.1987). Upon execution of an earnest money agreement, the buyer obtains an "equitable interest" in the property. *Id.* Thus, in *Lach*, this court held that a judgment lien did not attach to the judgment debtor's property if the judgment was docketed after the debtor/seller entered into an earnest money agreement to sell that property, even though the date of closing had not occurred. *Id.* at 805–06. Nevertheless, although an equitable interest passes upon execution of an earnest money agreement, legal title remains with the seller until the terms of the agreement are fulfilled—usually at closing. *United States v. Scarborough*, 813 F.2d 1244, 1245 (D.C.Cir. 1987) (because closing was never completed, legal title remained with sellers); *In re Marriage of Miller*, 133 Cal.App.3d 988, 184 Cal. Rptr. 408, 410 (1982) (one who contracts to buy real property does not acquire property until full performance of terms of escrow agreement). Thus, an earnest money agreement is an enforceable contract, but the passing of legal title remains contingent upon the occurrence of certain events, including, ultimately, closing of the sale.

In this case, the Masihs obtained only an equitable interest in the Property upon execution of the earnest money agreement. Legal title remained in Hudson until the time of his death on June 5, 1992. Therefore, because legal title to the Property had not changed, the Property had not been "sold or otherwise disposed of" as contemplated by the Trust. Thus, the Property was properly

---

1. The other two-thirds having already been assigned to Ciet.

distributable to Ciet in accordance with the Trust.

## CONCLUSION

Based on the forgoing, we conclude that, as a matter of law, legal title to the Property remained in the Trust and should have been conveyed to Ciet upon Hudson's death. The trial court was correct in granting summary judgment in favor of Ciet.

WILKINS, Judge, concurs.

ORME, Presiding Judge (concurring):

I concur in the court's opinion. I write separately only to express a note of caution. The word "sold," as used in real estate parlance, is uniquely ambiguous. In certain contexts, it may connote the outright passage of legal title. In other circumstances, a property might be deemed "sold" at the point in time when a contract of sale, passing equitable title to a buyer, has been entered into. In this case, we need not struggle with the problematic word "sold," because the trustor here used the additional phrase: "or otherwise *disposed* of." This is language which suggests a degree of finality consistent only with the passage of legal title.

Thus, our opinion in this case should not be taken as having precedential value in construing the word "sold," absent the additional phraseology before us here which, in my mind, is the key to our decision.