Filed 10/8/15  Conservatorship of B.C. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person and Estate of B.C. | 2d Civil No. B263456 (Super. Ct. No. 1469949) (Santa Barbara County) |
| SANTA BARBARA PUBLIC GUARDIAN, <br><br> Petitioner and Respondent, <br><br> v. <br><br> B.C., <br><br> Objector and Appellant. | |

B.C. appeals a judgment establishing a one-year conservatorship of his person and estate pursuant to the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.).[1]  Appellant challenges the sufficiency of the evidence to support the finding he was gravely disabled within the meaning of the LPS Act.  He further contends the trial court's imposition of certain legal disabilities is not supported by substantial evidence.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

FACTS AND PROCEDURAL BACKGROUND

In December 2014, the Santa Barbara Public Guardian (Public Guardian) petitioned for appointment of a conservator of appellant's person and estate. (§ 5352.) The petition alleged appellant is a gravely disabled person, as defined in section 5008, subdivision (h), and is unwilling to accept or is incapable of accepting voluntary treatment. The Public Guardian was appointed as temporary conservator, and appellant was placed at the Psychiatric Health Facility (PHF) in Santa Barbara.

A bench trial was held in February 2015. Appellant and his treating psychiatrist, Dr. Michael Mantz, were the only witnesses. Dr. Mantz is a team psychiatrist for the Assertive Community Treatment (ACT) Team, a division of the Santa Barbara County Department of Alcohol, Drug and Mental Health Services. Dr. Mantz began treating appellant in August 2014.

Prior to his placement at PHF, appellant, who is 33, lived "on the beach" in Isla Vista. Although he obtained clothing from the "free box" in Isla Vista, appellant had no food reserves. Sometimes he would "stand in front of The Habit in Isla Vista and ask people for a hamburger." At one point, appellant was arrested for trespassing while trying to get food. He said, "[T]he last . . . six or seven months have been hell because I haven't had any money to eat."

Appellant admitted he is mentally ill, saying he is "bipolar." Dr. Mantz testified that "the most accurate diagnosis right now given all the substance abuse that [appellant's] been under . . . [is] psychosis NOS [not otherwise specified]" and borderline personality disorder. Appellant's symptoms include impaired judgment, very poor impulse control, disorganized thinking behaviors and lack of insight into his mental health condition. Appellant was hospitalized over 17 times since 2008 and at least four times since Dr. Mantz began treating him. He has a record of over 70 arrests.

Appellant stated he would take his medication on his own, but his records confirm he has "been noncompliant on medications." Although he currently takes Cymbalta for his mental illness, Dr. Mantz opined that it is not the correct medicine for him. Dr. Mantz explained "the issue here is that [appellant] will refuse any of the other

2

medications that he does not want to take." He is particularly opposed to injectable medications, which are used to "guarantee compliance."

Appellant admitted to regularly using marijuana and to using spice on occasion. Dr. Mantz testified that appellant's PHF admissions and multiple arrests were triggered primarily by drug abuse. Dr. Mantz explained that appellant goes out, fails to properly take his prescribed medication and then takes other drugs which "put him over the edge. [A]t that point he can't keep it together and he becomes disorganized, yelling, screaming." Dr. Mantz testified that "when [appellant] gets high he's a completely different person. . . . [Y]ou can look at all the documents where he's yelling and screaming, oftentimes showing aggressive behaviors."

Dr. Mantz recounted an event in November 2014 in which appellant displayed "aggressive behavior" following his release from jail. Appellant "came into the ACT unit and was screaming, yelling, he slammed with all his might down on the desk scaring everyone." Dr. Mantz "was struck by the way that [appellant] did not calm down" when paramedics and the police arrived. Instead, appellant had to be restrained and transported to the hospital, where he "wound up striking or assaulting a nurse."

Appellant admitted having a difficult and complicated relationship with his parents. Appellant said he last saw his mother, who lives in Utah, in October 2014, but Dr. Mantz stated appellant has not actually seen "his mother face-to-face in well over a year." Dr. Mantz was "suspicious" of appellant's mother's willingness to aid him because he had seen two recent letters from her, one of which placed no conditions on assisting her son while the other conditioned it on appellant being "under conservatorship" and "completely free from marijuana." That appellant's mother had not seen appellant in over a year made Dr. Mantz "very concerned about the care that [appellant] would receive" from her.

Dr. Mantz said it was his understanding appellant's father, who lives in Riverside, would not be able to house appellant. He explained there is a history of abuse by the father of the mother, and that "there hasn't been much of a connection between [appellant] and his father" because of that abuse.

3

The trial court declared appellant gravely disabled and appointed the Public Guardian as his conservator. (§ 5008, subd. (h)(l)(A).) It also entered orders prohibiting appellant from possessing a driver's license or firearm, from entering into contracts in excess of $25 per month without the conservator's approval and from refusing treatment designed to remedy or prevent the recurrence of his grave disability. This appeal followed.

## DISCUSSION

### Grave Disability

Appellant does not dispute that he suffers from a mental health disorder. He contends there is no substantial evidence supporting the conclusion that he is gravely disabled as a result of that disorder. We disagree.

"Grave disability must be proven beyond a reasonable doubt to establish and to renew LPS conservatorships. [Citations.]" (*Conservatorship of Johnson* (1991) 235 Cal.App.3d 693, 696-697.) "Gravely disabled" is defined as "[a] condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A); *Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134.)

We review a conservatee's challenge to the sufficiency of evidence under the substantial evidence standard of review. (*Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 347-348.) Evidence is substantial where it is reasonable, credible, and of solid value. (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577 (*Walker*).) The testimony of a single witness, or circumstantial evidence and the reasonable inferences drawn therefrom, may be sufficient to support such a finding. (*Ibid.*; *Conservatorship of Carol K.*, *supra*, 188 Cal.App.4th at p. 134.) We resolve all conflicts and draw all reasonable inferences in favor of upholding the judgment, if possible. (*Conservatorship of Amanda B.*, at p. 350.)

Appellant argues that Dr. Mantz's testimony does not constitute substantial evidence of a grave disability because it is mere conclusion, similar to the expert testimony in *People v. Bassett* (1968) 69 Cal.2d 122, 144-146. The People contend that

4

appellant may not object to Dr. Mantz's testimony for the first time on appeal. It is true that appellant did not object to Dr. Mantz's qualifications as an expert. In *People v. Dowl* (2013) 57 Cal.4th 1079, the court determined that if a defendant fails to object at trial to a proffered expert's qualifications, his challenge on appeal to the expert's qualifications is forfeited, but he can still argue on appeal that the evidence, including the expert testimony, was insufficient to support the judgment. (*Id.* at pp. 1088-1089.)

*Bassett* held that evidence from expert witnesses who had neither met nor examined a criminal defendant could not constitute substantial evidence. (*People v. Bassett*, *supra*, 69 Cal.2d at pp. 144-146.) Here, in reaching the conclusion that appellant suffers a grave disability, Dr. Mantz relied on his personal treatment of appellant and his extensive review of appellant's medical records. Far from being mere conclusion, his testimony was based on a thorough understanding of appellant's psychiatric history as well as an understanding of his present mental condition. (See *ibid.*)

In determining whether an individual is gravely disabled, a trier of fact may not rely on a perceived likelihood that the individual will stop taking medication. But a history of failing to take prescribed mental health medication, coupled with a lack of insight into the individual's mental illness, may serve as the basis for making such a finding if the trier of fact determines the individual will not take his medication unless he is required to do so, and that his mental disorder makes him unable to provide for his needs for food, clothing or shelter. (*Conservatorship of Guerrero* (1999) 69 Cal.App.4th 442, 446-447 (*Guerrero*); *Walker*, *supra*, 206 Cal.App.3d at p. 1577.)

Dr. Mantz opined that appellant is unable to provide for his basic needs when he is not properly medicated for his mental disorder. He testified appellant would only take the medications he wished to take on his terms. That testimony is consistent with appellant's history of being discharged from the hospital, failing to take his prescribed medication, using marijuana and other street drugs and then experiencing a psychiatric crisis requiring another hospitalization. Appellant had over 17 psychiatric hospitalizations since 2008, including four in the months preceding his conservatorship. The reasonable inference from appellant's increasing pattern of hospitalizations is that,

5

without proper ongoing supervised medication and treatment, he is unable to live independently and provide for himself. Where there is "substantial evidence the conservatee could not provide for himself without medication and that he would not take his medication without the supervision of the conservator," there is substantial evidence of a grave disability. (*Guerrero*, *supra*, 69 Cal.App.2d at p. 446.)

Appellant challenges the court's finding that his mental disorder renders him "unable to provide for his . . . basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A).) Appellant conceded, however, that he had no home or food reserves. Appellant relies on *Conservatorship of Smith* (1986) 187 Cal.App.3d 903 to support his claim that homelessness is not enough to establish lack of shelter for purposes of LPS commitment. It is true that Smith had no permanent home and as a result of her delusions, she slept on the sidewalk in front of a church at night. (*Id.* at p. 910.) In *Smith*, however, the examining psychiatrist concluded that Smith's "cognitive intellect and most of her personality [were] intact and, despite the disorder, she could feed and clothe herself and provide for her own place to live." (*Id.* at p. 907.) The *Smith* court also made clear that additional evidence on the effect of Smith's behavior on her health and well-being might have changed its conclusion. (*Id.* at p. 910.) By contrast, appellant acknowledged he was not able to provide his own place to live. When he was not hospitalized or in jail, he lived on the beach in Isla Vista, which he admitted is "not a safe place for anybody to be at the moment." This evidence distinguishes appellant's case from *Smith*.

An individual who is otherwise gravely disabled may avoid a conservatorship by showing that he could "survive safely without involuntary detention with the help of responsible family, friends, or others who are both willing and able to help provide for [his] basic personal needs for food, clothing, or shelter." (§ 5350, subd. (e)(1); *Conservatorship of Early* (1983) 35 Cal.3d 244, 254.) Appellant claims his mother and father are willing to provide such help, but section 5350, subdivision (e)(2) states that "unless they specifically indicate in writing their willingness and ability to help, family, friends, or others shall not be considered willing or able to provide help."

6

No such writing appears in the record, and neither parent testified at trial.[2]  (See *Conservatorship of Johnson*, *supra*, 235 Cal.App.3d at p. 699, fn. 5.)

Dr. Mantz testified that he did see two letters from appellant's mother, one of which conditioned her help on appellant's being "under conservatorship" and "completely free from marijuana."  A second letter purportedly offered unconditional aid, but nothing in the record suggests it confirmed her "ability to help" provide for his basic personal needs for food, clothing or shelter.  (§ 5350, subd. (e)(2).)  To the contrary, Dr. Mantz testified that appellant's mother is difficult to reach and that there has been very little contact between appellant and his mother.  Given this lack of contact, Dr. Mantz questioned the type of care appellant would receive if he went to Utah, particularly given his mother's concern about his drug abuse.  In the absence of any evidence that appellant's parents are in a position to help him "survive safely," the trial court properly disregarded those alternatives.  (§ 5350, subd. (e)(1).)

*Legal Disabilities*

Appellant contends the disabilities imposed -- restrictions on his privilege to possess a driver's license and his rights to enter into contracts exceeding $25 and to possess a firearm -- are not supported by substantial evidence.  Appellant points to the lack of testimony or other evidence specifically addressing these disabilities.  We reject this contention.

The trial court is not required to make a specific, on-the-record statement of the reasons for each order regarding a special disability.  (*In re Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165 (*George H.*).)  Nor does the Public Guardian need to address each special disability by unique evidence directed at the particular disability.  (*Ibid.*)  We must affirm the imposition of special disabilities so long as substantial evidence supports them.  (*Ibid.*)

We conclude substantial evidence supports the disabilities imposed.  The evidence showed appellant had very poor impulse control, impaired judgment,

---

[2] We requested the superior court's file in this matter (Case No. 1469949).  Our review of the file does not disclose letters from appellants' parents or any other letters of support.

7

disorganized thinking, lack of insight into his condition and was prone to angry outbursts, justifying the trial court's finding appellant could not safely operate a motor vehicle. (*George H.*, *supra*, 169 Cal.App.4th at p. 166; see also Veh. Code, § 12806, subd. (c) [driver's license may be refused to person with a "mental disability, disease, or disorder which could affect the safe operation of a motor vehicle"].) The same evidence supports the finding that appellant's possession of a firearm "would present a danger to the safety of [appellant] or to others." (§ 8103, subd. (e)(1); see also § 5357, subd. (f).)

Under Civil Code section 1556, persons of "unsound mind" are not capable of entering into contracts. There are essentially three classifications of incapacity based on an "unsound mind" -- (1) entirely without understanding (Civ. Code, § 38); (2) unsound but not entirely without understanding; and (3) susceptible to undue influence (Civ. Code, § 39; *Smalley v. Baker* (1968) 262 Cal.App.2d 824, 834-835). Again, there was evidence that, due to his mental disorder, appellant had very poor impulse control, disorganized thinking and impaired judgment. Among other things, he would spend his money on cigarettes and marijuana rather than on food and other necessities. This is substantial evidence supporting the denial of his right to contract in amounts over $25 without approval.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

8

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara
_____

Paul Bernstein, under appointment by the Court of Appeal, for Objector and Appellant.

Michael C. Ghizzoni, County Counsel, Victoria Parks Tuttle, Senior Deputy County Counsel, Steven M. Baugh, Deputy County Counsel, for Petitioner and Respondent.